Marshall, C. J.
The sole question for determination is concerning the legality of the election of February 8, 1921. It is sought to justify this election on the theory that the majority did not intend to hold another meeting for the purpose of electing directors and that the majority in adjourning the meeting of January 11 were not acting in good faith, but were moved by a desire to prevent the minority from, having any representation on the board of directors. The minority proceeded upon the theory that if the majority did not intend to call another meeting the minority had a right to proceed under Section 8647, General Code, to call an annual meeting, and to hold the same by such representation as might attend, whether it amounted to a majority of the outstanding stock or not, arid that such meeting would be valid even though it proceeded in disregard of certain provisions in the regulations of the corporation, which regulations were not in conflict with the provisions of Section 8647, but supplementary thereto. Section 8647 provides as follows: “Except club-house companies, unless the regulations of a corporation otherwise provide, an annual election for trustees or directors shall be held on the first Monday in January' of each year. ■ When for any cause, trustees or directors are not elected at the annual meeting, or other meeting called for that purpose, they may be chosen at a members’ or stockholders’ meeting, if all the members or stockholders are present in person or by proxies,, or at a meeting called by the trustees or directors, or any two members or stockholders, notice of which has been given, in *665 writing, to each stockholder, or by publication for ten days in some newspaper printed in the county where the corporation is situated, or has its principal office. Trustees and directors in all cases shall continue in office until their successors are elected and qualified.”
Acting under the provisions of this section, two stockholders published notice of the meeting in the Grafton Citizen, a weekly newspaper published in Grafton, some distance from the county seat, although the record shows that not a single stockholder of the corporation lived in Grafton and only one stockholder received his mail on a rural delivery line leading out of Grafton. The notice was published in the issue of January 28th, and although another issue of the Grafton Citizen appeared on February 4th the publication did not appear in that issue. The language of the statute is, “by publication for ten. days in some newspaper printed in the county where the corporation is situated.” It will be seen that the statute does not require ten-days notice of the meeting, or that the notice be given ten days before the meeting, but requires “publication for ten days.” This clearly means that the publication is to continue for the period of ten days, and if the paper had been a daily paper it could only continue by keeping the notice in the paper during the entire period of ten days, which would mean ten different insertions. Inasmuch as it was a weekly paper, it could be kept in the paper the entire period of ten days by having it also appear in the issue of February 4th. The statute as to the giving of notice has not therefore *666 been strictly complied with. It is not claimed that any other mode of notice was employed or that the provisions as to giving notice set forth in the regulations of - the corporation were complied with. Even if it should be conceded for the purposes of the argument that the publication was legal and regular, it still remains to be shown thát the situation was such as to permit two stockholders to call a meeting for the election of directors. Two stockholders could only have such authority when the “directors are not elected, at the annual meeting, or other meeting called for that purpose.” The un-contradicted record shows that the annual meeting had not been finally adjourned. The meeting had been regularly called and by the action of nearly three-fourths of the stock represented at the meeting an adjournment had been made to meet at a later date at the call of the secretary upon notice given by the secretary in the usual method provided by the regulations, the postponement being for the .purpose of obtaining the opinion of an attorney upon the procedure to be followed in holding such election. It is not material to inquire whether the adjournment was in good faith, or whether it was intended not to call another meeting, or whether the subsequent meeting which was in fact held on February 25th proceeded regularly, because the inquiry has been limited to an inquiry into the validity of the meeting of February 8th. It is sufficient to say that a majority of the stockholders present or represented by proxies at the meeting of January 11th saw fit to adjourn the meeting to a later date and that their action in this respect was legal and *667 regular. If during the pendency of the annual meeting the minority conceived that their rights were not being respected, and if the minority believed that no adjourned meeting would be held, they had the right to demand that the annual meeting be reconvened, and upon such demand being refused by the secretary mandatory injunction would lie to compel giving the notice of such meeting. This is clearly the spirit of Cincinnati Volksblatt Co. v. Hoffmeister, 62 Ohio St., 189, and Fraternal Mystic Circle v. State, ex rel. Fritter, 61 Ohio St., 628.
It should also be pointed out in this connection that the regulations of the corporation make ample provision for calling meetings, it being provided that meetings shall be called “whenever so requested by stockholders holding twenty-five per cent, or more of the capital stock.” * Nine hundred and seven shares were more than twenty-five per cent, of the entire outstanding capital.
If it be assumed that two stockholders had the right to call a meeting to elect directors at the time the publication was made, and if it be further assumed that the meeting was otherwise regular in every respect, it ■ becomes pertinent to inquire whether 972 shares out of a total of 3617 shares could hold a valid election. Section 8704, General Code, provides in part: “When no other provision is specially made in this title, a corporation by its regulations may provide —
“1. The time, place and manner of calling and conducting its meetings.
*668 “2. The number of stockholders or members constituting a quorum.”
Section 8647 does not make any provision’as to the place of holding meetings and the power is therefore clearly conferred upon the corporation to make provision by its regulations for the place at which its meetings. shall be held. The regulations are very specific in requiring that all meetings shall be held at the principal office of the company and that its principal office is located at room 206 Ely Block, Elyria, Ohio. Section 8647 is also silent as to the requirement of the number of shares constituting a quorum, and the power is therefore conferred by Section 8704 upon the corporation to stipulate the number which shall constitute a quorum, and it is accordingly provided in the regulations that a quorum shall consist of a Majority of the stock outstanding. It is very clear therefore that the meeting of February 8th was not attended in person or by proxy by sufficient number of shares of stock to hold a legal meeting or to take any valid action except to adjourn,
Much stress has’ been placed in the argument upon the alleged motive or animus which moved the majority to adjourn the annual meeting. It is in all cases difficult to determine motive or a state of mind, but it is proper to observe in this case that the corporation had been proceeding for many years in direct violation of one of the main provisions of the corporation code. This court cannot therefore say that the majority was acting in a want of good faith in adjourning the meeting a few-days to permit their attorney to examine the law. The delay *669 was of course an unusual length of time for a question which involved no great difficulty, but on the other hand this court cannot say that the reason assigned for the delay in the action of legal counsel is insufficient or that it indicates'bad faith.
The rules and regulations of a corporation, when not in conflict with statutory provisions and when made pursuant to authority specifically granted by legislative enactment, have all the force and effect of a contract between the corporation and its members and between the members themselves. When stockholders subscribe to stock in a corporation they are deemed to know the statutory law governing corporations, and they are also deemed to know the provisions of the corporation’s rules and regulations, and they therefore impliedly if not expressly agree to abide by such regulations. Such regulations have been uniformly recognized as essential to orderly action in the business of the corporation and they would become a farce and worse than a plaything if not recognized and enforced. If this court should say that the provision in the regulations requiring that all meetings should be held at the office of the company and that the provision requiring a quorum to consist of a majority of all shares issued and outstanding are not to be recognized and enforced in this case, then it might well be inquired what provisions of rules and regulations would be enforceable ?
The minority stockholders having proceeded in disregard of the by-laws and regulations of the corporation, it is the judgment of this court that their action was illegal and the election held on February *670 8, 192*1, invalid. The relief prayed for will therefore be denied and the petition dismissed.

Judgment for respondents.

Johnson, Hough, Wanamaker, Jones and Matthias, JJ., concur.
Robinson, J., concurs in proposition one of the syllabus and in the judgment.